DAVID ADELSTEIN (SBN 105250)
dadelstein@bushgottlieb.com
BUSH GOTTLIEB
A Law Corporation
500 North Central Avenue, Suite 800
Glendale, California  91203-3345
Telephone:  (818) 973-3200
Facsimile:  (818) 973-3201

Attorneys for Plaintiffs Directors of the
Motion Picture Industry Pension Plan and
Directors of the Motion Picture Industry
Health Plan

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Directors of the Motion Picture Industry Pension Plan and Directors of the Motion Picture Industry Health Plan<br><br>Plaintiffs<br><br>vs.<br><br>Initial Entertainment Group, Inc., and Miramax Holding Corp.. a Delaware Corporation<br><br>Defendants | **CASE NO. CV-14-3461**<br><br>**COMPLAINT TO RECOVER UNPAID CONTRIBUTIONS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974; AND FOR BREACH OF A COLLECTIVE BARGAINING AGREEMENT**<br><br>**[29 U.S.C. §§ 1145 and 185(a)]** |

Plaintiffs Directors of the Motion Picture Industry Pension Plan and Directors of the Motion Picture Industry Health Plan ("Plans") allege:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, §502(e)(1) of the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA") [29 U.S.C. §1132(e)(1)] and §301 of the Labor-Management Relations Act (hereinafter "LMRA") [29 U.S.C. §185(a)].  This is an action by the Plans for breach of collective bargaining agreements between employers and a labor organization representing employees in an industry affecting

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

1  commerce and to enforce § 515 of ERISA [29 U.S.C. § 1145] as amended by §

2  306(a) of the Multi-Employer Pension Plan Amendments Act of 1980 (hereinafter

3  "MPPAA").

4  2.       Such jurisdiction exists without respect to the amount in controversy or the

5  citizenship of the parties, as provided in § 502(f) of ERISA [29 U.S.C. § 1132(f)]

6  and § 301(a) of the LMRA [29 U.S.C. § 185(a)].

7  3.       Venue is based on the location of the office in which the Plans are

8  administered, which is located in the Central District of California.  As such, venue

9  is appropriate pursuant to § 502(e)(2) of ERISA [29 U.S.C. §1132(e)(2)] and under

10  § 301 of the LMRA [29 U.S.C. §185(a)].

11                                    **PARTIES**

12  4.       The Directors are trustees who administer the assets of the Plans.  The Plans

13  are "employee welfare benefit plans" within the meaning of § 3(2) of ERISA, [29

14  U.S.C. § 1002(37)(A)] in that they were created pursuant to written declarations of

15  trust (hereinafter "Trust Agreements") between the International Alliance of

16  Theatrical Stage Employees (hereinafter "IATSE"), the International Brotherhood of

17  Teamsters Studio Transportation Drivers Local #349 (hereinafter "IBT") and motion

18  picture and television producer employers, and are maintained for the purpose of

19  providing their participants and beneficiaries with medical, surgical and hospital

20  benefits in the event of sickness, accident, disability or death, and retirement

21  benefits.  The Plans were created and now exist pursuant to § 302(c) of the LMRA.

22  5.       The Directors are fiduciaries under ERISA and have an obligation to protect

23  the Plans' assets including ensuring that employers are properly remitting pension

24  and health contributions to the Plans as required under collective bargaining

25  agreements between the IATSE and IBT, and the Defendants [hereinafter the

26  "Agreements"].  Under the Trust Agreements, the Directors have control and

27  authority over the Plans, including the authority to file actions such as the present

28  case to protect the Plans' trust assets.

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

COMPLAINT

6.      The Plans are "multi-employer plans" within the meaning of § 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A) in that more than one employer is required to contribute to the Plans and the Plans are maintained pursuant to collective bargaining agreements between the IATSE, the IBT and multiple motion picture and television producers.

7.      At all times material herein, the IATSE and IBT have been labor organizations representing employees in the motion picture and television business which is an industry affecting commerce within the meaning of § 302 of the LMRA.

8.      Defendant Initial Entertainment Group, Inc.  [hereinafter "IEG"], at all times relevant herein, is and has been a corporation organized and existing under the laws of the State of California with its principal place of business in Los Angeles County, California, and is an "employer" within the meaning of § 3(5) of ERISA, [29 U.S.C. § 1002(5)] and § 501 of the LMRA, [29 U.S.C. § 142].  As such, IEG is an employer as that term is used in § 301(a) of the LMRA [29 U.S.C. § 185(a)].

9.      Defendant Miramax Holding Corp. [hereinafter "Miramax"] at all times relevant herein, is and has been a corporation organized and existing under the laws of the State of Delaware, and licensed to do business by the State of California, with its principal place of business in Los Angeles County, California, and is both an "employer" within the meaning of § 3(5) of ERISA, [29 U.S.C. § 1002(5)] and § 501 of the LMRA, [29 U.S.C. § 142].  As such, Miramax is an employer as that term is used in § 301(a) of the LMRA [29 U.S.C. § 185(a)].

**FACTUAL ALLEGATIONS RE "ALI"**

10.     Columbia Pictures Industries, Inc., [hereinafter "Columbia"] produced the theatrical motion picture entitled "Ali"  pursuant to its written collective bargaining Agreements with the IATSE and the IBT, and employed motion picture technicians in accordance with those Agreements.  Columbia produced "Ali" as a signatory to the terms and conditions of the Trust Agreements creating the Plans at all times material herein.  At all times material herein, Columbia has been obligated to the

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

terms and provisions of the Agreements and Trust Agreements with respect to the motion picture "Ali."

11.     Pursuant to the Agreements and Trust Agreements, Columbia is under an obligation to make certain monetary contributions to the Plans based upon a percentage of the gross receipts derived from exploitation of "Ali" on free television and in the Supplemental Markets of pay television, videocassettes and DVDs (hereinafter jointly referred to with free television as "Residual Contributions").

12.     IEG entered into a written agreement with Columbia by which IEG purchased from Columbia the rights to distribute "Ali" in foreign territories, in motion picture theaters (the "theatrical market"), the free television market and the Supplemental Markets, and pursuant to which IEG promised Columbia that it would make the Residual Contributions owed by Columbia to the Plans as required by the Agreements and Trust Agreements with respect to these foreign territories (hereinafter the "Columbia-IEG Agreement).

13.     On or about January 3, 2012, IEG entered into a buyers assumption agreement ["BAA"] with Columbia with respect to the motion picture Ali, pursuant to the terms of which IEG assumed Columbia's obligation to make the Residual Contributions owed to the Plans as required by the Agreements and the Trust Agreements with respect to the foreign territories in which "Ali" was distributed, for the express benefit of the Plans.  A true and correct copy of the BAA is attached hereto as Exhibit A.

14.     The Plans are informed and believe, and thereon allege, that IEG exploited the "Ali" distribution rights licensed from Columbia pursuant to these written agreements, and that IEG has received payments from foreign distributors in consideration of the sub-license of these distribution rights.

15.     Pursuant to Articles XIX and XXVIII of the IATSE Agreement, Articles 15 and 21 of the IBT Agreement and the Trust Agreements, Columbia and IEG have

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

1 been required to make Residual Contributions to the Plans based on the gross

2 receipts received from these foreign distributors for "Ali."

3 16.    IEG has breached the Agreements, the Trust Agreement, the Columbia-IEG

4 Agreement and the BAA by failing to make any Residual Contributions to the Plans

5 based on its distribution of the motion picture "Ali" in foreign territories.

6 **FACTS RE "AN UNFINISHED LIFE"**

7 17.    Unfinished Films, Inc, produced the motion picture entitled "An Unfinished

8 Life" pursuant to the IATSE Agreement and as a signatory to the terms and

9 conditions of the Trust Agreements creating the Plans, and employed motion picture

10 technicians in accordance with those Agreements.  Pursuant to a written agreement

11 between Miramax Productions Inc. [hereinafter "MPI"] and the IATSE [hereinafter

12 the "MPI Umbrella Agreement"], MPI agreed that it controlled Unfinished Films,

13 Inc. and therefore would guarantee all of the obligations of Unfinished Films, Inc. to

14 comply with the terms of the IATSE Agreement and the Trust Agreements,

15 including but not limited to the obligation to make Residual Contributions to the

16 Plans based on the distribution of "An Unfinished Life."

17 18.    IEG entered into a written agreement [hereinafter the "Unfinished Life

18 Distribution Agreement"] with MFC Film Rights, LLC, [hereinafter "MFC"]

19 pursuant to which IEG purchased from MFC the license to distribute "An

20 Unfinished Life" in foreign territories and pursuant to which IEG promised MFC

21 that it would make the Residual Contributions owed by the producer of "An

22 Unfinished Life" to the Plans as required by the Agreements with respect to these

23 foreign territories, for the express benefit of the Plans.

24 19.    Plaintiffs are informed and believe, and thereon allege, that at the time MFC

25 entered into the Unfinished Life Distribution Agreement with IEG, MFC held the

26 copyright interest in "An Unfinished Life," was the alter ego of MPI and entered

27 into the agreement with IEG for the benefit of MPI and the Plans.

28

20.     Plaintiffs are informed and believe, and thereon allege, that MPI has ceased to exist as a corporate entity, but that its operations, assets and liabilities have been assumed by Miramax, including but not limited to the MPI Umbrella Agreement and Unfinished Life Distribution Agreement.

21.     Pursuant to the Agreements, Trust Agreements, MPI Umbrella Agreement and Unfinished Life Distribution Agreement, Miramax and IEG are under an obligation to make Residual Contributions to the Plans based upon a percentage of the gross receipts derived from exploitation of "An Unfinished Life" in foreign territories.

22.     The Plans are informed and believe, and thereon allege, that IEG exploited the "An Unfinished Life" distribution rights licensed from MFC pursuant to these written agreements, and that IEG has received payments from foreign distributors in consideration of the sub-license of these distribution rights.

23.     Pursuant to Articles XIX and XXVIII of the IATSE Agreement, Articles 15 and 21 of the IBT Agreement and the Trust Agreements, IEG and Miramax have been required to make Residual Contributions to the Plans for "An Unfinished Life."

24.     IEG and Miramax have breached the Agreements and the Trust Agreement by failing to make any Residual Contributions to the Plans whatsoever with respect to the motion picture "An Unfinished Life" in foreign territories.

### FACTS RE "VERY BAD THINGS"

25.     VBT Productions, Inc., [hereinafter "VBT"] produced the motion picture entitled "Very Bad Things"  pursuant to the IATSE Agreement and the IBT Agreements, and employed motion picture technicians in accordance with those Agreements.  VBT produced "Very Bad Things" as a signatory to the terms and conditions of the Trust Agreements creating the Plans at all times material herein. At all times material herein, VBT has been obligated to the terms and provisions of

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

the Agreements and Trust Agreements with respect to the motion picture "Very Bad Things."

26.     The Plans are informed and believe, and thereon allege, that IEG entered into a written agreement with VBT (hereinafter the "VBT-IEG Agreement") pursuant to which IEG obtained certain distribution and/or exploitation rights and guaranteed VBT's obligations to the Plans pursuant to the Agreements and Trust Agreements, including but not limited to making the Residual Contributions to the Plans with respect to the motion picture "Very Bad Things" for the express benefit of the Plans.

27.     The Plans are informed and believe, and thereon allege, that IEG exploited the "Very Bad Things" distribution rights licensed from VBT pursuant to these written agreements, and that IEG has received payments from distributors in consideration of the license of these distribution rights.

28.     Pursuant to Articles XIX and XXVIII of the IATSE Agreement, Articles 15 and 21 of the IBT Agreement, the Trust Agreements and the VBT-IEG Agreement, IEG have been required to make Residual Contributions to the Plans based on the gross receipts it received from these foreign distributors for "Very Bad Things."

29.     VBT and IEG have breached the Agreements and the Trust Agreement by failing to make any Residual Contributions to the Plans whatsoever based on distribution of the motion picture "Very Bad Things."

## FIRST CAUSE OF ACTION

(Breach of Collective Bargaining Agreement and

Trust Agreements Against IEG)

30.     The Plans incorporate by reference each allegation contained in Paragraphs 1 through 29 as though fully set forth herein.

31.     The Plans are informed and believe, and thereon allege,  in the written agreements between IEG and Columbia with respect to "Ali" (including but not limited to the BAA),  in the written agreements between IEG and MFC Film Rights,

LLC with respect to "An Unfinished Life" (including but not limited to the Unfinished Life Distribution Agreements), and in the written agreements between IEG and VBT with respect to "Very Bad Things," that IEG agreed in writing to assume the obligation to pay any and all Residuals Contributions owed to the Plans based on IEG's distribution, directly or indirectly, of all three motion pictures.

32.     The Plans are informed and believe, and thereon allege, that the intent of IEG and the other parties with respect to these agreements was to have IEG fulfill the contractual obligation that each of the producers had to make the Residual Contributions to the Plans set forth in the Agreements that the producers/distributors had signed with the IATSE and IBT, including the Trust Agreements, with respect to "Ali," "An Unfinished Life" and "Very Bad Things" [hereinafter jointly referred to as the "Pictures"].

33.     The Plans are informed and believe, and thereon allege, that based on IEG's promises as set forth above, the Plans were intended third party beneficiaries of IEG's written agreements with the producers/distributors of each of the Pictures, and that IEG therefore has assumed the contractual obligation that the Producers had to make Residual Contributions to the Plans with respect to the Pictures.

34.     The Plans have made demand on IEG to make the Residual Contributions owed by the signatory producers to the Plans based on IEG's distribution of the Pictures in accordance with IEG's agreements with the signatory producers.  IEG has refused to do so.

35.     The Plans are informed and believed, and thereon allege, that the signatory producers of "An Unfinished Life" and "Very Bad Things" ceased to exist and do business soon after these pictures were completed, and that the signatory producers were incorporated and operated with the intent that they would cease to exist and do business prior to the time that any Residual Contributions would be due to the Plans.

36.     The Plans are informed and believe, and thereon allege, that IEG knew that the signatory producers of "An Unfinished Life" and "Very Bad Things" would not

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

be able to pay the Residual Contributions owed the Plans based on distribution of these two pictures, and therefore contracted for IEG to assume the obligation to pay Residual Contributions to the Plans.  IEG signed the BAA with Columbia expressly intending to assume Columbia's obligation to make Residual Contributions to the Plans with respect to "Ali."  By virtue of the written agreements between IEG and Columbia, IEG and MFC Film Rights, LLC and IEG and VBT, IEG assumed the obligations of the Agreements and Trust Agreements, including the responsibility for making the Residual Contributions to the Plans for the Pictures.

37.     The Plans therefore assert their rights as third party beneficiaries to the agreements between IEG and the signatory producers to receive the Residual Contributions owed to the Plans that IEG promised to pay as to each of the Pictures.

38.     Pursuant to the terms of the Trust Agreements, the Plans have the authority to conduct an audit of the books and records of signatory employers for the purpose of determining the accuracy of Residual Contributions made to the Plans.  The Trust Agreements provide that if such an audit discloses a delinquency or underpayment, the cost of the audit shall be borne by the signatory who is found to be delinquent, and that if litigation is required to compel such an audit, the costs of such litigation are to be borne by the signatory.

39.     The Plans conducted an audit of IEG with respect to the Pictures, and notified IEG in writing that IEG owes the Plans Residual Contributions with respect to each of the Pictures.   IEG has failed and refused to make any Residual Contributions to the Plans for any of the Pictures for any of the foreign territories it licensed as required by the IATSE and IBT Agreements, the terms of the Trust Agreements, thereby violating § 301 of the Labor-Management Relations Act [29 U.S.C. §185(a)].

40.     By the terms of the Agreements and Trust Agreements, IEG agreed that in the event it failed to pay contributions when due, it would be considered delinquent with the Plans and would pay the Plans the sum of twenty percent (20%) of the total

amount then due, or interest on the amount due at the rate of twelve percent (12%) from the ten (10) business days after notice of the claim, whichever is greater, as liquidated damages for each delinquency.  The Plans are informed and believe, and thereon allege, that liquidated damages are due to the Plans by IEG, in an amount to be established by proof at the trial herein.

41.     By the Agreements and Trust Agreements, IEG also agreed that in the event of any delinquency, it would pay legal and auditing costs in connection therewith, whether before or after litigation is commenced.  These reasonable costs will be determined at trial.

42.     It has been necessary for the Plans to engage the law firm of Bush Gottlieb for the purpose of compelling the audit and collecting any and all amounts due from IEG for the Pictures.  Pursuant to the Agreements and Trust Agreements, the Plans are entitled to their reasonable attorneys' fees in connection therewith.

43.     Pursuant to the Agreements and Trust Agreements, IEG owes the Plans interest at the annual rate of twelve percent (12%) on all unpaid contributions from the dates the sums were originally due to the Plans to the date of judgment.  The Plans are informed and believe, and thereon allege, that interest is due to the Plans by IEG, in an amount to be established by proof at the trial herein.

44.     At all times material herein, IEG was under an affirmative duty, pursuant to the terms of the Agreements and Trust Agreements to provide the Plans' Directors, their agents and the Plans with information so that they may determine whether contributions paid were proper and to pay to the Plans the correct amount of fringe benefit contributions.  The Plans are informed and believe, and on that basis allege, IEG failed to accurately report this information and pay the contributions.  The Plans reposed trust and confidence in IEG and relied on IEG to accurately report and pay the correct amount of Residual Contributions to the Plans.

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

COMPLAINT

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

# SECOND CAUSE OF ACTION

## (Against IEG for Violation of 29 U.S.C. § 1145)

45.     The Plans incorporate by reference each allegation contained in Paragraphs 1 through 29 and 31 through 44 as though fully set forth herein.

46.     By virtue of the Agreements, the Trust Agreements, the Columbia-IEG Agreement, and the IEG-Columbia BAA with respect to the motion picture "Ali," IEG is an "employer who is obligated to make contributions" to the multiemployer plans known as the Plans under the terms of the Agreements and the Trust Agreements within the meaning of 29 U.S.C. § 1145, and is therefore obligated to make the Residual Contributions to the Plans for the motion picture "Ali" in an amount to be proven at trial.

47.     By virtue of the Agreements, Trust Agreements and the Unfinished Life Distribution Agreement with respect to the motion picture "An Unfinished Life," IEG is an "employer who is obligated to make contributions" to the multiemployer plans known as the Plans under the terms of the Agreements and the Trust Agreements within the meaning of 29 U.S.C. § 1145, and is therefore obligated to make the Residual Contributions to the Plans for the motion picture "An Unfinished Life" in an amount to be proven at trial.

48.     By virtue of the Agreements, Trust Agreements and the VBT-IEG Agreement with respect to the motion picture "Very Bad Things," IEG is an "employer who is obligated to make contributions" to the multiemployer plans known as the Plans under the terms of the Agreements and the Trust Agreements within the meaning of 29 U.S.C. § 1145, and is therefore obligated to make the Residual Contributions to the Plans for the motion picture "Very Bad Things" in an amount to be proven at trial.

49.     IEG has violated 29 U.S.C. § 1145 by failing to make any Residual Contributions to the Plans with respect to the Pictures.

50.     Pursuant to 29 U.S.C. § 1132(g)(2) IEG is required  to pay the Plans' their reasonable attorneys fees and costs of this action, interest on the unpaid Residual Contributions and liquidated damages in accordance with the Trust Agreements.

### THIRD CAUSE OF ACTION

(Breach of Collective Bargaining Agreement and

Trust Agreements Against Miramax)

51.     The Plans incorporate by reference each allegation contained in Paragraphs 1 through 9 and 17 through 24, as though fully set forth herein.

52.     Miramax has failed and refused to make any Residual Contributions to the Plans for the motion picture "An Unfinished Life" for any of the foreign territories it licensed as required by the IATSE  and IBT Agreements and the terms of the Trust Agreements, thereby violating § 301 of the Labor-Management Relations Act (hereinafter "LMRA") [29 U.S.C. §185(a)].

53.     Pursuant to the terms of the Trust Agreements, the Plans have the authority to conduct an audit of the books and records of signatory employers for the purpose of determining the accuracy of Residual Contributions made to the Plans.  The Trust Agreements provide that if such an audit discloses a delinquency or underpayment, the cost of the audit shall be borne by the signatory who is found to be delinquent, and that if litigation is required to compel such an audit, the costs of such litigation are to be borne by the signatory.

54.     The Plans conducted an audit of Miramax with respect to the Pictures, and notified Miramax that it owes the Plans Residual Contributions with respect to "An Unfinished Life."   Miramax has failed and refused to make Residual Contributions to the Plans for "An Unfinished Life" in foreign territories, thereby violating the Agreements and the Trust Agreements.

55.     By the Agreements and Trust Agreements, Miramax agreed that in the event it failed to pay contributions when due, it would be considered delinquent with the

COMPLAINT

1   Plans and would pay the Plans the sum of twenty percent (20%) of the total amount

2   then due, or interest on the amount due at the rate of twelve percent (12%) from the

3   ten (10) business days after notice of the claim, whichever is greater, as liquidated

4   damages for each delinquency.  The Plans are informed and believe, and thereon

5   allege, that liquidated damages are due to the Plans by Miramax, in an amount to be

6   established by proof at the trial herein.

7   56.     By the Agreements and Trust Agreements, Miramax also agreed that in the

8   event of any delinquency, it would pay legal and auditing costs in connection

9   therewith, whether before or after litigation is commenced.  These reasonable costs

10  will be determined at trial.

11  57.     It has been necessary for the Plans to engage the law firm of Bush Gottlieb

12  for the purpose of compelling the audit and collecting any and all amounts due from

13  Miramax for "An Unfinished Life."  Pursuant to the Agreements and Trust

14  Agreements, the Plans are entitled to their reasonable attorneys' fees in connection

15  therewith.

16  58.     Pursuant to the Agreements and Trust Agreements, Miramax owes the Plans

17  interest at the annual rate of twelve percent (12%) on all unpaid contributions from

18  the dates the sums were originally due to the Plans to the date of judgment.  The

19  Plans are informed and believe, and thereon allege, that interest is due to the Plans

20  by Miramax, in an amount to be established by proof at the trial herein.

21  59.     At all times material herein, Miramax was under an affirmative duty, pursuant

22  to the terms of the Agreements and Trust Agreements to provide the Plans'

23  Directors, their agents and the Plans with information so that they may determine

24  whether contributions paid were proper and to pay to the Plans the correct amount of

25  fringe benefit contributions.  The Plans are informed and believe, and on that basis

26  allege, Miramax failed to accurately report this information and pay the

27  contributions.  The Plans reposed trust and confidence in Miramax and relied on

28

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

282674.2  11011-14018

13

1 Miramax to accurately report and pay the correct amount of Residual Contributions

2 to the Plans.

3

4 **FOURTH CAUSE OF ACTION**

5 (Against Miramax for Violation of 29 U.S.C. § 1145)

6 60.    The Plans incorporate by reference each allegation contained in Paragraphs 1

7 through 30 and 52 through 59 as though fully set forth herein.

8 61.    By virtue of the MPI Umbrella Agreement with the IATSE,  the VBT-IATSE

9 Agreement, and the Trust Agreements, with respect to the motion picture "An

10 Unfinished Life," Miramax is an "employer who is obligated to make contributions"

11 to the multiemployer plans known as the Plans under the terms of the Agreements

12 and the Trust Agreements within the meaning of 29 U.S.C. § 1145, and is therefore

13 obligated to make the Residual Contributions to the Plans for "An Unfinished Life,"

14 in an amount to be proven at trial.

15 62.    Miramax has violated 29 U.S.C. § 1145 by failing to make any Residual

16 Contributions to the Plans with respect to the Pictures.

17 63.    Pursuant to 29 U.S.C. § 1132(g)(2) Miramax is required  to pay the Plans'

18 their reasonable attorneys fees and costs of this action, interest on the unpaid

19 Residual Contributions and liquidated damages in accordance with the Trust

20 Agreements.

21

22    WHEREFORE, the Plans pray for judgment against IEG as follows with

23 respect to the First and Second Causes of Action:

24    1.    For unpaid Residual Contributions to the Plans for all three Pictures in

25 an amount to be established at trial;

26    2.    For liquidated damages in an amount to be established at trial;

27    3.    For interest at the rate of twelve percent (12%) on all fringe benefit

28 contributions from due dates;

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

282674.2  11011-14018                    14

BUSH GOTTLIEB SINGER LOPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California  91203-3345

4.    For reasonable attorneys' fees and costs of this action incurred by the Plans;

5.    For costs of the audit in amounts to be proved at trial; and

6.    For such additional relief as this Court deems just and proper.

AND WHEREFORE, the Plans pray for judgment against Miramax as follows with respect to the Third and Fourth Causes of Action:

1.    For unpaid Residual Contributions to the Plans for the motion picture "An Unfinished Life" in an amount to be established at trial;

2.    For liquidated damages in an amount to be established at trial;

3.    For interest at the rate of twelve percent (12%) on all fringe benefit contributions from due dates;

4.    For reasonable attorneys' fees and costs of this action incurred by the Plans;

5.    For costs of the audit in amounts to be proved at trial; and

6.    For such additional relief as this Court deems just and proper.

DATED: May 5, 2014

DAVID ADELSTEIN
BUSH GOTTLIEB  A Law Corporation

By: /s/David Adelstein
       DAVID ADELSTEIN
Attorneys for Directors of the Motion Picture
Industry Pension Plan & Directors of the
Motion Picture Industry Health Plan